1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                    * * * * *

9    CAROL MORSOVILLO,                )
                                      )
10                     Plaintiff,     )        2:07-CV-01011-LRH-RJJ
                                      )
11   v.                               )
                                      )
12   CLARK COUNTY, a Nevada political entity; )   ORDER
     EIGHTH JUDICIAL DISTRICT COURT, a )
13   Nevada public entity, STATE OF NEVADA, )
     CHUCK SHORT, in his official and )
14   individual capacity; STEVE RUSHFIELD, in )
     his official and individual capacity; DOES I )
15   through X, inclusive; and ROE     )
     CORPORATIONS, 1-100,             )
16                                    )
                       Defendants.    )
17   _____ )

18          Before the court is Defendants Clark County, Eighth Judicial District Court, State of

19   Nevada, Chuck Short, and Steve Rushfield's (collectively "Defendants") Motion for Summary

20   Judgment (#34[1]).  Plaintiff Carol Morsovillo has filed a response (#40) to which Defendants

21   replied (#41).

22   **I.      Facts and Procedural History**

23          This is an employment discrimination dispute arising out of Plaintiff's work as a bailiff in

24   the Eighth Judicial District Court in Clark County, Nevada.  In 1991, Clark County hired

25   Plaintiff as a bailiff, and in 1993, Plaintiff began working in the Eighth Judicial District Court.

26          In January of 2000, Plaintiff filed a lawsuit in federal court against various defendants,

27   including Defendants Clark County, the Eighth Judicial District Court, and Short.  *See*

28   _____

          [1]Refers to the court's docket entry number.

*Morsovillo v. Clark County*, 2:00-cv-115.   In December of 2005, the case went to trial before the Honorable Philip M. Pro.  Following the close of Plaintiff's case in chief, Judge Pro dismissed the suit pursuant to Federal Rule of Civil Procedure 50.

During the trial, Plaintiff's attorney called psychiatrist Dr. Saleha Baig to testify about Dr. Baig's treatment of Plaintiff.  Dr. Baig's testimony relating to Plaintiff's mental state concerned Stephanie Barker, the Chief Deputy District Attorney.  Citing Dr. Baig's testimony, on January 3, 2006, Barker sent Defendant Short, the Eighth Judicial District Court Administrator, a letter stating, "[T]here appears to be just cause for, and it is recommended that District Court Administration . . . require and obtain a certificate of [Plaintiff's] fitness for duty as a court bailiff.  It is further recommended that [Plaintiff] be placed on paid administrative leave pending receipt of the certificate of fitness . . . ."  (Defs.' Mot. Summ. J. (#34), Ex. C, Ex. 1.)  Barker noted with particular concern Plaintiff's job duties, which require her to carry a weapon and respond to conflict.

On January 9, 2006, Defendant Short asked Plaintiff to submit to a certificate of fitness examination and placed Plaintiff on administrative leave with pay pending the certificate of fitness report.  Sometime in February, Plaintiff underwent a psychiatric examination.  The doctor conducting the examination concluded Plaintiff was fit for her work as a bailiff.

On March 9, 2006, Plaintiff returned to work.  At that time, Defendant Rushfield, a sergeant and the supervising bailiff at the Family Court of the Eighth Judicial District Court, asked Plaintiff to work in Department 16, where various bailiffs had been having problems.  For many years prior to her absence from work, Plaintiff had worked in the Temporary Protective Order ("TPO") court and wanted to return to that position.  However, Defendant Rushfield ultimately decided not to place Plaintiff in either the TPO court or Department 16, and instead made Plaintiff a utility bailiff.

In April of 2006, as a result of surgery on her foot, Plaintiff was out from work for two to three weeks.  Plaintiff testified that when she returned to work Defendant Rushfield ignored her seniority in making work assignments, altered her work schedule, failed to follow up on various complaints she had made, and talked negatively about her to other employees.

2

On June 12, 2006, Plaintiff was again placed on administrative leave with pay pending an investigation into a matter that occurred on June 9, 2006. On that day, Judge Jennifer Elliot held a hearing in a case involving Brandon Arduino. Judge Elliot had previously ordered Arduino to bring his ten year old child to the court for an interview with Judge Elliot. However, Arduino failed to bring the child. Judge Elliot instructed Arduino to contact the child's grandmother and have her bring the child to the court by 5:00 p.m.

Defendant Rushfield informed Plaintiff of Judge Elliot's instructions. As a result of this conversation, Plaintiff believed that she was to permit Arduino to make monitored phone calls. If Arduino's conversation went beyond bringing the child to the court, Plaintiff was to terminate the phone call immediately.

Over the course of the afternoon, Arduino tried to reach his mother several times. He eventually reached her at 4:45 p.m., but she refused to come to the courthouse. Plaintiff spoke with the mother, and during the conversation, both Arduino and his mother became agitated.

By this time, Defendant Rushfield had arrived and attempted to bring Arduino back to the holding area. Plaintiff and Defendant Rushfield dispute what happened next. Plaintiff alleged Defendant Rushfield used excessive force in placing Arduino in handcuffs and in returning him to the holding area.

Both Plaintiff and Defendant Rushfield contacted Judge Elliot about the incident independently, and each told her their version of the events. Judge Elliot conducted a hearing, where Arduino admitted that he had been disrespectful and combative.

The Justice' Court's legal department conducted an investigation into the incident. The legal department concluded that the following allegations against Plaintiff were unsubstantiated: (1) Plaintiff made false statements to Judge Elliot concerning the alleged use of excessive force by Defendant Rushfield; (2) Plaintiff presented ex parte information to Judge Elliot in an apparent attempt to influence her decision in the case; (3) Plaintiff made misleading statements to the court, on the record, about Defendant Rushfield; and (4) Plaintiff interfered with court proceedings. However, the Department concluded Plaintiff improperly engaged in the following conduct: (1) discussing a pending case with a third party with court authorization; and (2)

3

1   engaging in a heated and disrespectful exchange with Judge Elliot.  The Department concluded

2   that her conduct warranted an oral warning, or at most, a written reprimand.

3          Sometime in June of 2006, before the legal department concluded its investigation,

4   Plaintiff submitted a letter of resignation.  In July, she attempted to rescind her resignation.

5   Defendant Sharp did not accept the recision.

6          On May 31, 2006, Plaintiff filed a charge of discrimination with the Nevada Equal Rights

7   Commission, alleging that she had been subjected to gender discrimination and a hostile work

8   environment, and had been retaliated against for filing the previous lawsuit.  On August 8, 2006,

9   Plaintiff amended her charge of discrimination to include claims for "ongoing retaliation in the

10  form of an unwarranted investigation" and constructive discharge.  (Pl.'s Opp. (#40), Ex. B.)

11  **II.    Legal Standard**

12         Summary judgment is appropriate only when "the pleadings, depositions, answers to

13  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

15  of law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence,

16  together with all inferences that can reasonably be drawn therefrom, must be read in the light

17  most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

18  *Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,

19  1154 (9th Cir. 2001).

20         The moving party bears the burden of informing the court of the basis for its motion,

21  along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v.*

22  *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the

23  moving party must make a showing that is "sufficient for the court to hold that no reasonable

24  trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d

25  254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.

26  Cal. 2001).

27         To successfully rebut a motion for summary judgment, the non-moving party must point

28  to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

4

1   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

2   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

3   U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

4   summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A

5   dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

6   jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere

7   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

8   establish a genuine dispute; there must be evidence on which the jury could reasonably find for

9   the plaintiff.  *See id.* at 252.

10  **III.   Discussion**

11       Plaintiff asserts the following claims for relief: (1) gender discrimination; (2) retaliation;

12  (3) violations of her right to equal protection pursuant to 42 U.S.C. § 1983; (4) intentional

13  infliction of emotional distress; (5) negligent supervision; and (6) constructive discharge.

14  Defendants seek summary judgment with regard to each of these claims.

15       **A.   Exhaustion of Administrative Remedies**

16       Defendants first argue Plaintiff's claims are limited to those listed in her charge of

17  discrimination.  In particular, Defendants argue Plaintiff cannot include the June, 2006, incident

18  with Arduino and Judge Elliot in her claims because Plaintiff filed her charge on March 31,

19  2006, before the incident occurred.  However, even where a claim is not included in the original

20  charge of discrimination, a district court can nonetheless hear the claim if the claim "[falls]

21  within the scope of the EEOC's actual investigation or an EEOC investigation which can

22  reasonably be expected to grow out of the charge of discrimination."  *Yamaguchi v. U.S. Dep't of

23  the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (citation omitted).  In making its

24  determination, the court must construe the EEOC charge with "utmost liberality."  *Id.*  (citation

25  omitted).

26       Plaintiff's EEOC charge alleged that from January 9, 2006, to May 31, 2006, Defendants

27  discriminated against her on the basis of her gender and retaliated against her for bringing the

28  previous lawsuit.  In addition, Plaintiff's amended charge alleged that Defendants continued to

5

1  retaliate against her for filing her original charge of discrimination and that she had been

2  constructively discharged.

3       Although the incident with Judge Elliot occurred after Plaintiff filed the charge of

4  discrimination, the court finds that the incident nonetheless falls within the scope of the charge.

5  Considering the nature of Plaintiff's complaints and the fact that the June, 2006, incident took

6  place less than a month after Plaintiff filed her original charge, it is reasonable to expect that an

7  investigation into the June, 2006, incident could have grown out of the EEOC's investigation

8  into the allegations contained in the charge.  Accordingly, the court will consider the June, 2006,

9  incident as a part of Plaintiff's claims.

10      **B.     Discrimination**

11      Plaintiff alleges Defendants discriminated against her on the basis of her gender in

12 violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.  The parties

13 interpret this claim to include a claim of hostile work environment discrimination and a claim of

14 disparate treatment discrimination.  The court will address each theory below.

15              **1.     Hostile Work Environment**

16      Although not explicitly included in the text of Title VII, claims based on a hostile work

17 environment fall within Title VII's protections. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

18 To state an actionable claim under Title VII, Plaintiff must show that (1) she was subjected to

19 verbal or physical conduct based on her religion; (2) the conduct was unwelcome; and (3) the

20 conduct was "sufficiently severe or pervasive to alter the conditions of her employment and

21 create an abusive working environment." *Galdamex v. Potter*, 415 F.3d 1015, 1023 (9th Cir.

22 1995) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

23      Defendants challenge Plaintiff's ability to demonstrate the third element of a hostile work

24 environment claim.  To determine whether conduct was sufficiently severe or pervasive to violate

25 Title VII, the court considers "all the circumstances, including the frequency of the

26 discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

27 offensive utterance; and whether it unreasonably interferes with an employee's work

28 performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).

1    "The working environment must both subjectively and objectively be perceived as

2    abusive." *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995) (*citing*

3    *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  To determine if the workplace is objectively

4    hostile, courts examine the issue from the perspective of a reasonable person with the same

5    fundamental characteristics as the claimant.  *Id.*  Key factors in determining whether a work

6    environment is hostile include (1) the frequency of the conduct; (2) the severity of the conduct;

7    (3) whether the conduct is physically threatening or humiliating, as opposed to a mere utterance;

8    and (4) whether the conduct unreasonably interferes with an employee's work performance.

9    *Harris*, 510 U.S. at 23.

10   Plaintiff has identified the following conduct as supporting her hostile work environment

11   claim: (1) Defendants' failure to respond to her complaints about Defendant Rushfield's conduct;

12   (2) Defendant Rushfields' unwarranted work reassignments and "tactic demotions," including no

13   longer being able to work in the TPO courtroom and being assigned a "utility bailiff" position;

14   (3) Defendant Rushfield's spreading negative rumors about her mental health and fitness for

15   duty; and (4) being placed on administrative leave in June of 2006 and required to remain at her

16   home from 8 a.m. to 5 p.m.

17   The court finds that this conduct was not sufficiently frequent or severe to support a claim

18   for a hostile work environment.  The conduct and comments at issue were not threatening or

19   severe, and beyond Plaintiff's conclusory statement in her brief, there is no evidence indicating

20   that the conduct interfered with Plaintiff's work performance.  In sum, while Plaintiff appears to

21   have disagreed with Defendants' decision to place her on administrative leave and with

22   Defendant Rushfield's management style and ethics, the instances Plaintiff cites do not rise to the

23   level of severe and pervasive harassment.  Summary judgment with regard to this claim is

24   therefore appropriate.

25          **2.      Disparate Treatment**

26   Plaintiff also appears to allege a claim for disparate treatment discrimination.  Title VII

27   makes it an unlawful employment practice to "discriminate against any individual with respect to

28   his compensation, terms, conditions, or privileges of employment, because of such individual's

7

1  race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.  To prevail, the plaintiff must

2  establish a prima facie case of discrimination by presenting evidence that "gives rise to an

3  inference of unlawful discrimination."  *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148

4  (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   A

5  plaintiff can establish a prima facie case of discrimination through either the  burden shifting

6  framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of

7  discriminatory intent.  *See Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) ("When

8  responding to a summary judgment motion . . . [the plaintiff] may proceed using the *McDonnell*

9  *Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence

10  demonstrating that a discriminatory reason more likely than not motivated [the employer].")

11  (citation omitted) (alterations in original).

12      Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of

13  establishing a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  If

14  the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate,

15  nondiscriminatory reason for its allegedly discriminatory conduct.  *Id.*  If the defendant provides

16  such a justification, the burden shifts back to the plaintiff to show that the defendant's

17  justification is a mere pretext for discrimination.  *Id.* at 804.

18      Here, even assuming Plaintiff has met her initial burden, the court finds that Defendants

19  have articulated legitimate, nondiscriminatory reasons for its decisions to (1) place Plaintiff on

20  administrative leave in January of 2006, (2) change Plaintiff's work duties, and (3) place Plaintiff

21  on administrative leave in June of 2006.  For example, Defendants contend that they placed

22  Plaintiff on administrative leave in January to conduct an investigation into her mental health,

23  reassigned Plaintiff to different work duties because of the needs of the court, and placed

24  Plaintiff on administrative leave in June because of the incident with Judge Elliot.

25      When the defendant demonstrates a legitimate, nondiscriminatory reason for its

26  employment decision, the *McDonnell Douglas* presumption of discrimination "simply drops out

27  of the picture."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (*quoting St. Mary's*

28  *Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1994)).  The ultimate burden rests on the plaintiff to

1   demonstrate that the defendant's offered reasons are a pretext for the employer's true

2   discriminatory motive. *Id.* at 890.  A plaintiff may demonstrate pretext "either directly by

3   persuading the court that a discriminatory reason more likely motivated the employer or

4   indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead*

5   *v. Metro. Prop. & Cas. Ins. Co.*, 237 F. 3d 1080, 1093-94 (9th Cir. 2001) (*quoting Texas Dept.*

6   *Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

7        In *Wallis*, the Ninth Circuit clarified the plaintiff's burden in demonstrating that the

8   defendant's justification is a pretext:

9       [I]n deciding whether an issue of fact has been created about the credibility of the
    employer's nondiscriminatory reasons, the district court must look at the evidence

10   supporting the prima facie case, as well as the other evidence offered by the plaintiff
    to rebut the employer's reasons.  And, in those cases where the prima facie case

11   consists of no more than the minimum necessary to create a presumption of
    discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue

12   of fact.

13   26 F.3d at 890.

14        Plaintiff has failed to meet her burden here.  No evidence before the court suggests that

15   Defendants took the above-described actions because of Plaintiff's gender.  While, as discussed

16   below, Defendants' actions may give rise to a claim for retaliation, the evidence before the court

17   does not support a gender-based discrimination claim.  Accordingly, summary judgment with

18   regard to Plaintiff's discrimination claim is appropriate.

19       **C.   Retaliation**

20        Plaintiff alleges Defendants retaliated against her for filing a lawsuit in January of 2000

21   alleging discrimination claims against various defendants, including Defendants Clark County,

22   the Eighth Judicial District Court, and Short.  Under section 2000e-3(a), it is unlawful "for an

23   employer to discriminate against any of his employees . . . because he has opposed any practice

24   made an unlawful employment practice by [Title VII ], or because he has made a charge,

25   testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

26   this subchapter."  42 U.S.C. § 2000e-3(a).

27        To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she

28   engaged in an activity protected under title VII; (2) her employer subjected her to an adverse

1   employment action; and (3) a causal link exists between the protected activity and the adverse

2   employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) *(citing Ray*

3   *v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).  If a plaintiff establishes a prima facie case

4   of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory

5   reason for its decision.  *Ray*, 217 F.3d at 1240.  If the defendant demonstrates such a reason, the

6   burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a

7   discriminatory motive.  *Id.*

8          In her previous suit, Plaintiff alleged a claim for sexual discrimination.  Thus, Plaintiff

9   engaged in an activity protected under Title VII.  *See* 42 U.S.C. § 2000e-2.  As to the second

10  element of Plaintiff's prima facie case, in the retaliation context, to demonstrate an adverse

11  employment action, a plaintiff must show that a reasonable employee would have found the

12  challenged action materially adverse, meaning that it "well might have dissuaded a reasonable

13  worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v.*

14  *White*, 548 U.S. 53, 68 (2006) (citations omitted).  While a prima facie case of Title VII's

15  substantive provision (anti-discrimination) and a prima facie case of retaliation both require an

16  adverse employment action, the two terms are not coterminous.  *Id.* at 67.  Instead, "the scope of

17  the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory

18  acts and harm." *Id.*

19         In her opposition, Plaintiff argues she suffered an adverse employment action when,

20  following the December, 2005, trial, Defendant Short placed her on administrative leave pending

21  the outcome of the fitness for duty evaluation.  A reasonable employee would likely be dissuaded

22  from bringing a sexual harassment lawsuit if she knew that, as a result of the suit, she would be

23  placed on administrative leave and required to undergo a fitness for duty examination.  As such,

24  the court finds that issues of fact exist concerning whether Plaintiff's placement on

25  administrative leave constitutes an adverse employment action.

26         As to the third element, the court finds that Plaintiff has identified issues of fact

27  concerning the causal connection between Plaintiff's filing of her discrimination lawsuit and the

28  adverse action she suffered.  It is undisputed that almost immediately after the trial, Defendant

1   Short placed Plaintiff on administrative leave pending an investigation into her mental state.

2   However, Plaintiff has presented evidence indicating that Defendants may have been on notice of

3   her mental state well before the December, 2005, trial.  (*See* Pl.'s Opp. (#40), Ex. C (stating

4   claim for intentional infliction of emotion distress), Ex. D (citing psychological examination

5   reports and records).)  Plaintiff has also presented evidence suggesting that Defendants were

6   aware that other bailiffs may have been suffering from mental instability or under the influence

7   of pain medication, and Defendants nonetheless permitted these bailiffs to continue working.

8   (*See id.*, Ex. H at 170:14-175:22.)   This evidence demonstrates that there are issues of fact as to

9   whether Defendant Short placed Plaintiff on administrative leave because she chose to exercise

10  her rights under Title VII.

11          For similar reasons, the court also finds issues of fact exist concerning whether

12  Defendants' reasons for their conduct were a mere pretext for discrimination.  Accordingly, the

13  court will deny summary judgment as to Plaintiff's retaliation claim.

14          The court notes that its denial of summary judgment on Plaintiff's retaliation claim

15  extends only to the State of Nevada, the Eighth Judicial District Court, and Clark County.  *See*

16  *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 976 (9th Cir. 1994) (citation omitted)

17  (noting that Congress has abrogated Eleventh Amendment immunity with respect to Title VII

18  claims).  As to Defendants Short and Rushfield, Title VII limits civil liability to the employer.

19  *See Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993) (citations omitted).  Thus,

20  "individual defendants cannot be held liable for damages under Title VII . . . ." *Id.* (citation

21  omitted).  To the extent Plaintiff's retaliation claim alleges retaliation by Defendants Short and

22  Rushfield, the court will grant summary judgment.

23          **D.      Equal Protection**

24          Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants denied her equal protection in

25  violation of the Fourteenth Amendment to the United States Constitution.  "The Equal Protection

26  Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within

27  its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

28  similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985) (*citing Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "To establish a § 1983 Equal
Protection violation, a plaintiff must show that the defendant, acting under color of state law,
discriminated against her as a member of an identifiable class and that the discrimination was
intentional."  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130,1134 (9th Cir. 2003)
(citations omitted).

For equal protection purposes, Plaintiff is a member of a protected class because she
alleges discrimination on the basis of her gender.  *See Bray v. Alexandria Women's Health
Clinic*, 506 U.S. 263, 322 (1991) ("women are unquestionably a protected class").  However, as
discussed above, Plaintiff has failed to present evidence suggesting that Defendants treated her
differently than similarly situated individuals because of her gender.  As such, the court will grant
summary judgment on Plaintiff's equal protection claim.

### E.      Negligent Supervision

Plaintiff alleges Defendants Eighth Judicial District Court and Clark County negligently
"failed to properly supervise its employees . . . , who were allowed to engage in retaliatory,
harassing[,] and hostile conduct against Plaintiff."  In Nevada, employers have a duty to "use
reasonable care in the training, supervision, and retention of his or her employees to make sure
that the employees are fit for their positions."  *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996)
(*citing* 27 Am. Jur. 2d *Employment Relationship* §§ 475-76 (1996)).

To the extent Plaintiff's negligent supervision claim is based on discrimination, the court
will grant summary judgment because the court has found that Plaintiff has failed to raise an
issue of fact showing that any employee of the Eighth Judicial District Court discriminated
against her.  However, the court has found that issues of fact remain concerning whether
Defendants engaged in retaliatory conduct, and to the extent Plaintiff alleges negligent
supervision arising out of Defendant Short's allegedly retaliatory conduct, the court will deny
summary judgment.

There is no evidence before the court indicating the existence or extent of any
discrimination and retaliation training Defendants provide to their employees, and it is not clear
what procedures supervisors must follow when placing employees on administrative leave.  In

12

addition, no evidence demonstrates how Defendants Eighth Judicial District Court and Clark County responded to or were involved in the decision to place Plaintiff on administrative leave. As such, the court finds that a genuine issue of material fact exists as to whether Defendant Short's allegedly retaliatory placement of Plaintiff on administrative leave could have been prevented with different or additional training and supervision. Accordingly, summary judgment on this claim is not appropriate.

**F.   Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, the plaintiff must demonstrate the following: (1) "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress"; (2) severe or extreme emotional distress; and (3) actual or proximate causation. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (citation omitted).

Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted). This is not such a case. The court finds no allegations in this case that amount to extreme and outrageous conduct, and Plaintiff has pointed to no specific evidence to support such a claim. Thus, summary judgment is appropriate on this claim.

**G.   Constructive Discharge**

To establish a constructive discharge, Plaintiff must show that "working conditions [became] so intolerable that a reasonable person in the [her] position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 142 (2004) (citation omitted). Because Plaintiff has failed to establish that she was subjected to a hostile work environment, it follows that she has not made the further showing that the "abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. As a result, the court will grant summary judgment on the constructive discharge claim.

///

///

13

1

### H.    Immunity Under State Law

2    As a preliminary matter, the court notes that "state laws conferring immunity on

3    government entities and officials cannot thwart Title VII actions against them." *Sosa v. Hiraoka*,

4    920 F.2d 1451, 1460 (9th Cir. 1990).  Thus, to the extent Defendants seek immunity under state

5    law, such immunity only protects them from liability for the negligent supervision claim, the

6    remaining state law claim.

7    In relevant part, Nevada Revised Statutes section 41.032 provides that no action may be

8    brought against an "officer or employee of the state or any of its agencies or political

9    subdivisions" that is "[b]ased upon the exercise or performance or the failure to exercise or

10   perform a discretionary function or duty . . . whether or not the discretion involved is abused."

11   Nev. Rev. Stat. § 41.032(2).  "Thus, [Nevada Revised Statutes section 41.032(2)] grants the State

12   and its political subdivisions sovereign immunity from civil liability when the challenged act was

13   discretionary in nature." *Ransdell v. Clark County*, 192 P.2d 756, 761 (Nev. 2008).

14   The Nevada Supreme Court has adopted the United States Supreme Court's test in *United*

15   *States v. Gaubert*, 499 U.S. 315 (1991) for determining the scope of discretionary immunity.

16   *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007).  "[T]o fall within the scope of

17   discretionary-act immunity, a decision must (1) involve an element of individual judgment or

18   choice and (2) be based on considerations of social, economic, or political policy." *Id.* at 729.

19   "Nevada courts look to federal decisional law on the Federal Tort Claims Act for

20   guidance on what types of conduct discretionary immunity protects." *Neal-Lomax v. Las Vegas*

21   *Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (*citing Martinez*, 168 P.3d at

22   727-28).  The Ninth Circuit and other circuits addressing the issue have held that "decisions

23   relating to the hiring, training, and supervision of employees usually involve policy judgments of

24   the type Congress intended the discretionary function exception to shield." *Vickers v. United*

25   *States*, 228 F.3d 944, 950 (9th Cir. 2000) (citations omitted).  Accordingly, here, Defendants the

26   Eighth Judicial District Court, Clark County, and the State of Nevada would normally be entitled

27   to discretionary immunity on the negligent supervision claim.

28   However, Plaintiff argues that the bad-faith exception to discretionary immunity applies.

14

1  Under Nevada law, where a defendant's actions are "attributable to bad faith, immunity does not

2  apply whether an act is discretionary or not." *Falline v. GNLV Corp.*, 823 P.2d 888, 892 (Nev.

3  1991).  The Nevada Supreme Court has explained that an action performed in bad faith cannot be

4  "discretionary" under Nevada Revised Statutes section 41.032 because a bad-faith act "occurs

5  outside the circumference of authority" and therefore "has no relationship to a rightful

6  prerogative even if the result is ostensibly within the actor's ambit of authority." *Id.* at 892 n.3.

7      Similarly, the Ninth Circuit has recognized, "In general, governmental conduct cannot be

8  discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir.

9  2000) (citation omitted).  As officials do not "possess discretion to violate constitutional rights,

10  the discretionary function exception does not apply . . . ." *Galvin v. Hay*, 374 F.3d 739, 758 (9th

11  Cir. 2004) (citations omitted).

12      Here, viewing the facts in the light most favorable to Plaintiff, a reasonable juror could

13  find that in supervising Defendant Short, the employer defendants, in bad faith or in violation of

14  federal law, permitted Short to retaliate against Plaintiff for exercising her rights under Title VII.

15  In other words, where, as here, there are contested issues of fact concerning (1) a supervisor's

16  retaliatory conduct and (2) the employer's role in permitting its employee to engage in the

17  retaliatory conduct, the court cannot find, as a matter of law, that the employer did not act in bad

18  faith or in violation of federal law.  Accordingly, the court will deny summary judgment to

19  Defendants the Eighth Judicial District Court, Clark County, and the State of Nevada on the basis

20  of statutory immunity.[2]

21  **IV.     Conclusion**

22      To summarize, the court has found that summary judgment is appropriate with regard to

23  Plaintiff's claims for gender discrimination, equal protection, intentional infliction of emotional

24  distress, and constructive discharge.  As to Plaintiff's claim for retaliation, the court has found

25

26          [2]Defendants also argue Defendants Short and Rushfield are entitled to qualified immunity.
27  Above, the court has dismissed all of Plaintiff's claims against the individual defendants.  Accordingly,
    the court need not consider whether the individual defendants are entitled to qualified immunity.
28

that issues of fact remain concerning whether Defendants the Eighth Judicial District Court, Clark County, and the State of Nevada retaliated against Plaintiff for exercising her rights under Title VII.  In addition, the court has identified issues of fact as to whether these Defendants negligently supervised Defendant Short, unlawfully permitting him to retaliate against Plaintiff. Finally, the court has concluded that there are issues of fact as to whether, in supervising Defendant Short, Defendants the Eighth Judicial District Court, Clark County, and the State of Nevada acted in bad faith or in violation of federal law.  As a result, at this time, the court cannot determine whether these Defendants are entitled to discretionary immunity.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#34) is DENIED in part and GRANTED in part.

IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial order within thirty (30) days from entry of this Order.  *See* Local Rules 16-4 and 26-1 (e)(5).

IT IS SO ORDERED.

DATED this 12th day of November, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE